IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| DR. DEIRDRE LEANE,<br><br>                    **Plaintiff,**<br>v.<br><br>WILLIAM RALPH CARTER, JR.,<br><br>                    **Defendant.** | Civil Action No. 1:21 – CV – 00514 |

### BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED VERIFIED COMPLAINT

**NOW COMES** Defendant William R. Carter, Jr., ("Defendant") by and through his undersigned counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Rules 7.2 and 7.3, and hereby submits this Brief in Support of Defendant's Motion to Dismiss.

**I.**    **Nature of the Matter Before the Court**

Dr. Deirdre Leane ("Plaintiff") filed this action to recover money she allegedly loaned to Defendant on a periodic basis dating back to January 2015 pursuant to oral agreements between the parties. Without a promissory note or other contract evidencing the debt, Plaintiff seeks to hold Defendant liable under a variety of alternative legal and equitable theories, including: (a) Action on Open Account, (b) Breach of Contract, and (c) Unjust Enrichment. To recover damages in this action, Plaintiff must prove the

existence of a legally valid debt. For the reasons set forth below, Defendant moves to dismiss all of Plaintiff's claims.

## II. Concise Statement of Facts

Plaintiff and Defendant are former coworkers. (Dkt. 14, Amended Compl. ¶6). Plaintiff claims that Defendant sought loans from Plaintiff beginning in 2014. (Id. ¶9). Plaintiff claims that she began to loan monies to Defendant in exchange for repayment and that Plaintiff kept a ledger of her loan payments to Defendant. (Id. ¶10). Plaintiff also claims that the individual loans made to Defendant were intended by both Plaintiff and Defendant to be considered as a connected series rather than as independent of each other. (Id. ¶11). Plaintiff claims that she adjusted repayment dates for amounts loaned to Defendant over time and that Plaintiff accordingly adjusted the balance. (Id. ¶13). Plaintiff attaches an account ledger to her Amended Verified Complaint as Exhibit A. (Id. ¶14). Plaintiff also contends that Defendant has periodically acknowledged the validity of the debt he owes to Plaintiff, including two instances where he and Plaintiff discussed the alleged debt: 27 July 2015 and 7 August 2017. (Id. ¶15).

Plaintiff's Amended Verified Complaint seeks recovery from Defendant by asserting three alternative claims for relief: Action on Open Account, Breach of Contract, and Unjust Enrichment. (Id. ¶¶ 17 – 28). Plaintiff appears to base her claims for relief on alleged loans made via oral understandings between the parties beginning January 28, 2015 through October 4, 2019, with the most recent two alleged loan payments having

been made on October 4, 2019 and June 26, 2018. (Dkt. 14-1, Exhibit A). Plaintiff alleges no specific repayment terms regarding the alleged loans other than that Plaintiff agreed to loan amounts and Defendant agreed to repay Plaintiff. (Dkt. 14, ¶ 22). Plaintiff alleges that Defendant made partial repayment to Plaintiff on 21 April 2020, and that Defendant is presently obligated to repay Plaintiff at least $283,452.94 under one or more of her causes of action. (Id. ¶¶ 20, 26)

### III. Question(s) Presented

A. Are Plaintiff's claims barred by the Statute of Limitations?

B. Should this Court exercise subject matter jurisdiction if Plaintiff's claims fail to meet the $75,000.00 amount in controversy threshold?

### IV. Choice of Law

A federal district court sitting in diversity jurisdiction must apply the choice-of-law rules of the forum state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941). Because this is a case based on this Court's diversity jurisdiction, the substantive law of North Carolina controls concerning Plaintiff's state law claims. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). "Federal Courts are courts of limited jurisdiction having subject matter jurisdiction only over those matters specifically designated by the Constitution or Congress." Aetna Cas. & Sur. Co. v. Hillman, 796 F.2d 770, 773 (5th Cir. 1986); See also Epps v. Bexar-Media Atacosa Counties Water Improvement District, 665 F.2d 594, 595 (5th Cir. 1982). Therefore, federal law governs jurisdictional disputes between the parties. 28 U.S.C. § 1332(a)(1).

## V. Argument

### A. Legal Standard – Rule 12(b)(6)

The United States Supreme Court explains, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). To satisfy federal pleading standards, a plaintiff must "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Twombly and Iqbal shifted federal pleading standards "from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To satisfy this "more stringent pleading standard," Woods v. City of Greensboro, 855 F.3d 639, 648 (4th Cir. 2017), the plaintiff is "required to allege facts to satisfy the elements of a cause of action" pursued in a complaint. McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015). The Court "need not accept as true unwarranted inferences,

4

unreasonable conclusions, or arguments." Kloth v. Microsoft Corp., 444 F.3d 312, 319 (4th Cir. 2006). Thus, "[u]nder Iqbal, the court performs a two-step analysis. First, the court separates factual allegations from allegations not entitled to the assumption of truth (i.e., conclusory allegations, bare assertions amounting to nothing more than a formulaic recitation of the elements). Second, the court determines whether the factual allegations, which are accepted as true, plausibly suggest an entitlement to relief." Sauers v. Winston-Salem/Forsyth Cty. Bd. of Educ., 179 F. Supp. 3d 544, 550 (M.D.N.C. 2016) (internal citations, quotations, and modifications omitted). Dismissal is appropriate where the complaint lacks a cognizable legal theory, lacks sufficient facts alleged under a cognizable legal theory, or contains allegations disclosing some defense or bar to recovery. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988); Funk v. Stryker, 631 F.3d 777, 779–83 (5th Cir. 2011).

**B. Plaintiff's Amended Verified Complaint Should be Dismissed for Failure to State a Claim upon which Relief may be Granted.**

I. <u>Plaintiff's Claims for Action on Open Account and Breach of Contract are Barred by the Statute of Limitations.</u>

This action was filed on June 22, 2021. (Dkt. 1, Compl.). According to the ledger attached to Plaintiff's Amended Verified Complaint, all but the final two alleged loan payments were provided to Defendant more than three years prior to the filing of this action. (Dkt. 14-1, Exhibit A). The applicable statute of limitations governing Plaintiff's claims for Action on Open Account and Breach of Contract is three (3) years. N.C.G.S. § 1-52(1). A claim for Breach of Contract generally accrues upon breach. Abram v.

Charter Medical Corp. of Raleigh, 100 N.C.App. 718, 720, 398 S.E.2d 331, 333 (1990). Plaintiff makes no specific allegations concerning when a breach occurred as the alleged verbal agreement between the parties was void of any re-payment terms, due dates, or any type of payment schedule or amortization schedule. N.C.G.S. § 1-31 provides:

> In an action brought to recover a balance due upon a mutual, open and current account, where there have been reciprocal demands between the parties, the cause of action accrues from the time of the latest item proved in the account on either side. (Id.)

Here, there is no requisite "mutuality" to invoke G.S. § 1-31. See Simon v. Mock, 331 S.E.2d 300, 302, 75 N.C.App. 564, 566 (1985) (finding G.S. § 1-31 inapplicable where a rental agreement between the parties was not a mutual account); Brock v. Franck, 194 N.C. 346, 139 S.E. 696, 697 (1927) (stating an account consisting of charges on one side and payments on the other is not a mutual account).

Importantly, in Hollingsworth v. Allen, the North Carolina Supreme Court interpreted the prior version of G.S. § 1-31, (then known as C.S. § 421) which is nearly verbatim to the present rule, as follows:

> Under the authorities referred to, however, and many others could be cited, such a principle does not apply to a case of opposing, but unrelated, demands between the parties nor to an ordinary store account, though open and continued, where the credit is all on one side, and the only items of discharge consist in payments on account. In this last case, unless there has been a payment within the statutory period or some binding recognition of the account within such time, the statute runs from the date of each item. Hollingsworth v. Allen, 97 S.E. 625, 626 (N.C. 1918).

Consistent with Hollingsworth, the Court in McKinnie Bros. Co. v. Webster, 188 N.C. 514, 515, 125 S.E. 1, 2 (1924) stated:

6

> It is only where there is an understanding or agreement, express or implied, from the nature of the dealings between the parties, that the items of an account shall be applied as payments upon other items, arising out of transactions that are related to each other, and not disconnected, that the cause of action, for the balance due, accrues at the date of the last item. The account must be mutual, that is, involving reciprocal rights and liabilities; open, that is, contemplate further dealings between the parties; and current, that is, running with no time limitations fixed by agreement, express or implied, with the balance to be determined by an adjustment of credit and debit items. C. S. § 421, applies only to such an account.

Plaintiff in this action has alleged an account containing only credit on one side and payments on the other, which means there is no mutuality. (Dkt. 14-1, Exhibit A). Under Simon, Brock, Hollingsworth, and McKinnie Bros., Plaintiff is precluded from invoking protection from the statute of limitations under G.S. § 1-31. Therefore, any cause of action for an open account begins from the date of each loan installment provided to Defendant as indicated on the ledger (Id).

When an action is commenced more than three years after the claim arises on an account or other contractual debt, a statute of limitations defense may be overcome if the debtor has acknowledged his obligation within three years prior to the date the action is filed. Whitley's Elec. Service, Inc. v. Sherrod, 238 S.E.2d 607, 612, 293 N.C. 498, 503 (N.C. 1977). The North Carolina Supreme Court in Sherrod goes on to explain the application of this rule in two contexts, namely (1) a written acknowledgement, and (2) a partial payment:

> A mere promise or similar acknowledgment must be in writing in order to have this effect. G.S. §1-26. A part payment operates to toll the statute if made under such circumstances as will warrant the clear inference that the debtor in making the payment recognized his debt as then existing and

7

acknowledged his willingness, or at least his obligation, to pay the balance. <u>Bryant v. Kellum</u>, 209 N.C. 112, 182 S.E. 708 (1935); <u>Kilpatrick v. Kilpatrick,</u> 187 N.C. 520, 122 S.E. 377 (1924); <u>Cashmar-King Supply Co. v. Dowd & King</u>, 146 N.C. 191, 59 S.E. 685 (1907); <u>Battle v. Battle</u>, 116 N.C. 161, 21 S.E. 177 (1895). (Id).

N.C.G.S. § 1-26 provides: "[n]o acknowledgment or promise is evidence of a new or continuing contract, from which the statutes of limitations run, unless it is contained in some writing signed by the party to be charged thereby; but this section does not alter the effect of any payment of principal or interest." Here, there are no allegations of a written acknowledgement set forth in Plaintiff's Amended Verified Complaint that would overcome a statute of limitations defense pursuant to G.S. § 1-26. Rather, Plaintiff merely alleges:

> 15. Defendant has periodically acknowledged the validity of the debt he owes Plaintiff, as well as the amount owed. For example:
>
> a. On or about 27 July 2015, Defendant orally asked Plaintiff for a statement of the amount he owed; in response Plaintiff emailed Defendant a copy of Defendant's ledger at the time reflecting a balance owed of $95,120.00 USD. Defendant did not object or dispute the amount then owed.
> b. On or about 7 August 2017, Defendant sent a text message to Plaintiff asking for an additional loan of $5,000.00 USD; Plaintiff responded to Defendant that his then-balance owed was over $240,000.00 USD. In response, Defendant texted "I understand" and renewed his promise to repay Plaintiff.
> c. On or about 30 April 2020, Defendant's attorney Mark Raskin emailed Plaintiff a self-styled "Letter Agreement Re: Promissory Note Purchase and Repayment of Debt(s)." Raskin's email containing the document stated "As you know, Bob [attorney Robert Whitman] and I have been talking to Billy about your concerns. He wanted to come up with a proposal that he thought would be fair. The attached reflects his goal and he hopes you feel this is a reasonable compromise." (Dkt. 14, Amended Compl. ¶15).

8

Item 15(a) alleges that Defendant orally asked Plaintiff a question nearly six years before this action was commenced. Item 15(b) similarly references a text message interaction between Plaintiff and Defendant that purportedly occurred more than three years prior to this action being filed. Item 15(c) references the subject matter and introductory email of some correspondence from an attorney allegedly acting on Defendant's behalf without attaching the correspondence itself or disclosing its contents. (Id.). There are simply no allegations made by Plaintiff consistent with G.S. § 1-26 of a writing signed by Defendant, the party to be charged. Even if the August 7, 2017 text messages were treated as such a writing, which Defendant denies, those communications are too old to revive Plaintiff's claims in this case.

Similarly, Plaintiff's Amended Verified Complaint is void of any allegations concerning the facts and circumstances surrounding the alleged payments made by Defendant as shown on the ledger. (Dkt. 14-1, Exhibit A). Indeed, the only allegation in Plaintiff's Amended Verified Complaint regarding any payments made by Defendant states:

> 20. The amount identified in the ledger has been due and owing since the last transaction between the parties, a partial repayment made by Defendant to Plaintiff on 21 April 2020." (Dkt 14 ¶20).

According to <u>Sherrod</u>, Plaintiff must demonstrate sufficiently detailed facts in order for the factfinder to glean a <u>clear inference</u> that, by making partial payments, Defendant recognized the debt and acknowledged his willingness, or at minimum, his obligation, to pay the balance. 238 S.E.2d at 612, 293 N.C. at 503. Here, Plaintiff's

9

Amended Verified Complaint fails to do so, and Plaintiff is precluded from invoking G.S. § 1-31 to shield herself from the cause of action otherwise accruing from the date of each alleged loan made to Defendant. Therefore, the only arguably viable amount Plaintiff could recover under her claims for Action on Open Account and/or Breach of Contract is the $6,000.00 referenced above. (Dkt. 14, Amended Compl. ¶ 26). Plaintiff's claims for Action on Open Account and Breach of Contract should be dismissed, particularly in light of the amount in controversy and supplemental jurisdiction arguments set forth below.

> II. <u>Plaintiff's Claim for Unjust Enrichment is Barred by the Statute of Limitations.</u>

The statute of limitations governing Plaintiff's claim for Unjust Enrichment is also three (3) years. <u>Stratton v. Royal Bank of Canada</u>, 211 N.C.App. 78, 712 S.E.2d 221, 229 (2011); <u>Housecalls Home Health Care, Inc. v. State, Dept. of Health & Human Servs.</u>, 200 N.C.App. 66, 70, 682 S.E.2d 741, 744 (2009). Generally, a cause of action accrues when the wrong is complete and, thus, a plaintiff is entitled to assert the claim in court. <u>Housecalls Home Health Care</u>, 682 S.E.2d at 744; <u>Ruff v. Reeves Bros., Inc.</u>, 122 N.C.App. 221, 227, 468 S.E.2d 592, 596 – 597 (1996).

Here, all but the final two alleged loan payments were provided to Defendant more than three years prior to the filing of this action. (Dkt. 14-1, Exhibit A). Plaintiff makes no allegations of re-payment terms, due dates, or any payment schedule, amortization schedule, or other triggering event. Therefore, the only "wrong" that allegedly occurred during the three years prior to the commencement of this action happened upon the final

10

two loans being made to Defendant on June 26, 2018 for $1,000.00, and October 4, 2019 for $5,000.00, respectively. North Carolina jurisprudence regarding Unjust Enrichment claims does not provide a "revival" type of statute of limitations rule similar to the one articulated in Sherrod, supra. Therefore, the only arguably viable amount Plaintiff could recover under an Unjust Enrichment theory is the $6,000.00 referenced above, which is approximately 2% of the principal amount Plaintiff seeks to recover. (Dkt. 14 ¶ 26). Plaintiff's claim for Unjust Enrichment should also be dismissed, particularly in light of the amount in controversy and supplemental jurisdiction arguments set forth below.

### C. Plaintiff's Amended Verified Complaint Fails to Satisfy the Amount in Controversy Required to Establish Subject Matter Jurisdiction.

If the Court agrees with Defendant on the Statute of Limitations issues raised above, then Plaintiff's only remaining claims under any of Plaintiff's causes of action would be to recover the final two loan installments allegedly made to Defendant on June 26, 2018 for $1,000.00, and October 4, 2019 for $5,000.00, respectively. This Court may, in its discretion, dismiss the action in its entirety when Plaintiff's Verified Complaint fails to meet the $75,000.00 threshold amount in controversy.

Federal courts have original jurisdiction over suits for more than $ 75,000 between citizens of different states. 28 U.S.C. § 1332(a)(1). In certain circumstances, supplemental jurisdiction may exist under 28 U.S.C. § 1367(a):

> . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. (Id).

The U.S. Court of Appeals for the Fourth Circuit explains, "[t]he doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain or dismiss state law claims when the federal basis for an action drops away." Shanaghan v. Cahill, 58 F.3d 106, 109 (4th Cir. 1995); See also 28 U.S.C. § 1367(c). The Court applies certain "discretionary factors" in its analysis such as: convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy. Shanagan, 58 F.3d at 110; See also Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7, 108 S.Ct. 614, 619 n.7, 98 L.Ed.2d 720 (1988).

Federal courts may decline to exercise supplemental jurisdiction in certain circumstances. In particular, a court has discretion to dismiss or keep a case when it "has dismissed all claims over which it has jurisdiction." Shanaghan, 58 F.3d at 110; See also U.S.C. § 1367(c)(3). In applying the discretionary analysis of § 1367 in the context of a jurisdictional amount, "[f]irst, the court should look to the face of the complaint itself to determine whether it is a legal certainty that Plaintiff's claims do not reach the required amount." Shanaghan, 58 F.3d at 112. If a plaintiff only alleges a small amount of damages or it is otherwise obvious that the jurisdictional amount under § 1332(a) cannot be satisfied, the court must dismiss the case outright for lack of jurisdiction. (Id). Second, when an event subsequent to filing the Complaint reduces the amount in controversy, (i.e. the dismissal of one count based on the defendant's answer), the court

12

must then exercise discretion to determine whether to retain jurisdiction over the remainder of the case. (Id.). Consistent with the Statute of Limitations arguments set forth above, Defendant contends that the Amended Verified Complaint on its face, including Exhibit A attached thereto, makes it obvious that the $75,000.00 threshold cannot be satisfied, thus requiring dismissal of Plaintiff's claims.

In the alternative, the Court in its discretion can and should decline to exercise supplemental jurisdiction and dismiss Plaintiff's $6,000.00 case. In Shanagan, the Court explains: "[i]n particular, it is important to consider whether the amount claimed in the complaint was made in good faith, or whether plaintiff was consciously relying on flimsy grounds to get into federal court." 58 F.3d at 112. "Another critical equitable factor is the existence of any state limitations bars to refiling in state court." (Id.). Indeed, "[t]here are no situations wherein a federal court must retain jurisdiction over a state law claim, which would not by itself support jurisdiction." (Id. at 110).

In this case, the Court need not find bad faith by Plaintiff in order to dismiss this action. The vast majority of the transactions for which plaintiff's claims are founded are precluded by the three-year statute of limitations, with the exception of the loans purportedly made to Defendant on June 26, 2018 and October 4, 2019. Even when taken in the light most favorable to Plaintiff, the two remaining loan claims are for $1,000 and $5,000, respectively, and thus neither individually, nor in the aggregate, satisfy the amount in controversy requirement for subject matter jurisdiction in federal court based on diversity of citizenship.

With respect to convenience, Plaintiff is a resident of Dallas, Texas. (Dkt. 14, Amended Compl. ¶1). Should this Court exercise its discretion in refusing to retain jurisdiction for Plaintiff's remaining claims, it is unlikely that a lack of convenience or fairness will result to Plaintiff's detriment. Plaintiff filed this matter in the Middle District of North Carolina knowing from the outset that she would need to hire local counsel in North Carolina, that she may be required to travel to North Carolina for various proceedings, and that the Middle District may be unfamiliar territory. Should this case be dismissed for lack of subject matter jurisdiction, Plaintiff could refile this matter in North Carolina state court and submit to the jurisdiction of the Courts of North Carolina, which would result in little, if any, increased burden on Plaintiff and only minimal additional costs.

With respect to judicial economy and federal policy, Defendant contends that state court resources are more appropriate for adjudicating maters with a few thousand dollars at stake as opposed to clogging the federal judiciary with such claims. The United States Supreme Court explained, "[b]eginning with the first Judiciary Act in 1789 congress has placed a jurisdictional amount requirement on access to the federal courts in certain classes of cases, including diversity actions." Snyder v. Harris, 394 U.S. 332, 339-340, 89 S.Ct. 1053, 1058-59, 22 L.Ed.2d 319 (1969) (superseded by statute on other grounds) as recognized in Fireman's Fund Ins. Co. v. St. Paul Fire & Marine Ins. Co., 182 F.Supp.3d 793, 815 (M.D. Tenn. 2016). The initial required amount in controversy under the first Judiciary Act of 1789 was $500, which after a series of increases was changed to $10,000

14

and then eventually the $75,000 requirement under which diversity jurisdiction exists today. Snyder, 394 U.S. at 339; See also 28 U.S.C. § 1332(a). The purpose of these periodic but consistent increases is ". . . to check, to some degree, the rising caseload of the federal courts, especially with regard to the federal courts' diversity of citizenship jurisdiction." Snyder, 394 U.S. at 339 – 340.

In this case, the only claims made by Plaintiff that were not already barred by the statute of limitations at the time this action was filed consist of the two alleged loans by Plaintiff to Defendant for an aggregate amount of $6,000. (Dkt. 14-1, Exhibit A). As mentioned above, North Carolina state law provides a three-year statute of limitations for each of Plaintiff's claims (see N.C.G.S. § 1-52(a); Stratton, 712 S.E.2d at 229 (2011)). Despite these alleged loans being outstanding for more than six years, Plaintiff waited to file this action until just a few days prior to the expiration of the statute of limitations for the second to last payment. (Dkt. 14-1, Exhibit A). The only claim Plaintiff would have potentially maintained when this action was filed on June 22, 2021 that would not otherwise exist in a re-filed state court action would be the $1,000.00 loan allegedly made on June 26, 2018. (Id). While Defendant certainly does not concede any merits of Plaintiff's claims, or any potential defenses he may have, Plaintiff could presumably bring a timely action in state court to recover the $5,000.00 payment allegedly made to Defendant on October 24, 2019. This Court should not reward Plaintiff's delay in bringing this action by exercising discretionary supplemental jurisdiction.

15

Case 1:21-cv-00514-UA-JEP   Document 17   Filed 11/03/21   Page 15 of 18

Taking into consideration fairness, judicial efficiency, federal policy (particularly the intention of Congress to reduce the federal caseload), as demonstrated by the gradual increase in the amount in controversy requirement, it is not appropriate, nor the best use of this Court's resources, to retain jurisdiction over Plaintiff's $6,000 claim which could easily be adjudicated on an efficient basis in state court. At this stage it does not appear any issues concerning comity are implicated in this case. Therefore, the Court should exercise its discretion in dismissing Plaintiff's remaining claims for nominal damages.

## VI. Conclusion

Plaintiff has failed to state a claim upon which relief may be granted. Defendant respectfully requests that Plaintiff's Amended Verified Complaint be dismissed with prejudice.

## VII. Certification of Word Count

Pursuant to Local Rule 7.3(d)(1), the undersigned hereby certifies that the body of the above brief, including headings and footnotes, does not exceed 6,250 words.

[signature page follows]

Respectfully submitted,

This the 3rd day of November, 2021.

**SIGMON KLEIN, PLLC**

By: /s/ Ben E. Klein
NC Bar No. 40993
Email: ben@sklawnc.com

By: /s/ Grant Sigmon
NC Bar No. 43205
Email: grant@sklawnc.com

114 N. Elm St., Ste. 210
Greensboro, NC 27401
Telephone: 336-663-8773
Facsimile: 336-663-8777

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this day he served a copy of the foregoing document on counsel of record by electronically filing same via the ECF System, which will send notice to all counsel of record as follows:

Akiva M. Cohen
acohen@kusklaw.com
Kamerman, Uncyk, Soniker & Klein PC
1700 Broadway, 16th Floor
New York, NY 10019-5977

T. Greg Doucette
greg@tgdlaw.com
The Law Offices of T. Greg Doucette, PLLC
311 E. Main St.
Durham, NC 27701-3717

This the 3rd day of November, 2021.

**SIGMON KLEIN, PLLC**

By: /s/ Grant Sigmon
NC Bar No. 43205
Email: grant@sklawnc.com

*Attorney for Defendant*